1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10  DARYL GREGORY and SHIRLEY
    GREGORY,
11                  Plaintiffs,              No. CIV S-10-1872 KJM EFB

12      vs.

13  NATIONWIDE MUTUAL              ORDER
    INSURANCE COMPANY, a Ohio
14  Corporation; ALLIED PROPERTY
    & CASUALTY INSURANCE
15  COMPANY, a Iowa corporation;
    and DOES I through X,
16
                    Defendants
17  _____/

18              On September 25, 2009, plaintiffs filed a complaint in Sutter County Superior

19  Court, alleging that defendants breached a homeowner's insurance contract and the implied

20  covenant of good faith and fair dealing in denying coverage for a claim.  ECF No. 7 at 2.

21  Defendants removed the action to this court on July 16, 2010, based on 28 U.S.C. § 1332.  ECF

22  No. 1.

23              On October 12, 2011, defendants filed a motion for summary judgment.  ECF

24  No. 17.  Plaintiffs have opposed the motion, ECF No. 31, and defendants have replied, ECF

25  Nos. 40, 43.  The court heard argument on June 8, 2012; Gary Lafayette appeared for defendant

26  /////

                                         1

1 and Orrin Grover for plaintiffs.  After considering the parties' argument and the evidence and the

2 papers, the court GRANTS the motion for summary judgment, as explained below.

3 I.  Summary Judgment Standard

4          A court will grant summary judgment "if . . . there is no genuine dispute as to any

5 material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

6 The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

7 resolved only by a finder of fact because they may reasonably be resolved in favor of either

8 party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

9          The moving party bears the initial burden of showing the district court "that there

10 is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*,

11 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish

12 that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio*

13 *Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to

14 particular parts of materials in the record . . .; or show that the materials cited do not establish the

15 absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

16 evidence to support the fact."  FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586

17 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt

18 as to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of

19 *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the

20 governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at

21 247-48 (emphasis in original).

22          In deciding a motion for summary judgment, the court draws all inferences and

23 views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

24
_____
25          [1] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely
on cases decided before the amendment took effect, as "[t]he standard for granting summary
judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010
26 amendments.

1  587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a

2  whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

3  issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.*

4  *Co.*, 391 U.S. 253, 289 (1968)).

5  II.  Admissibility of Evidence

6          The evidence this court may consider in resolving the parties' competing claims

7  must be admissible:  "It is well settled that only admissible evidence may be considered by the

8  trial court in ruling on a motion for summary judgment."  *Beyene v. Coleman Sec. Servs., Inc.*,

9  854 F.2d 1179, 1181 (9th Cir. 1988); Fed. R. Civ. P. 56(c)(2).  The court will not consider

10  inadmissible hearsay in an affidavit to support or defeat summary judgement.  *Kim v. United*

11  *States*, 121 F.3d 1269, 1276-77 (9th Cir. 1997); *but see Burch v. Regents of Univ. of Cal.*,

12  433 F. Supp. 2d 1110, 1121 (2006).

13          The 2000 Amendments to Federal Rule of Evidence 701 distinguish lay from

14  expert testimony.  "[T]he distinction between lay and expert witness testimony is that lay

15  testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony

16  'results from a process of reasoning which can be mastered only by specialists in the field.'"

17  Fed. R. Evid. 701, Notes of Advisory Comm. on 2000 amendments (quoting *State v. Brown*,

18  836 S.W.2d 530, 549 (1992)).  A witness may provide both lay and expert testimony.  *Id.*

19  The general rule in the Ninth Circuit is that treating physicians, not specially hired to provide

20  expert testimony, are exempt from Rule 26 requirements.  *Goodman v. Staples The Office*

21  *Superstore, LLC*, 644 F.3d 817, 819 (9th Cir. 2011).  It is only ". . . when a treating physician

22  morphs into a witness hired to render expert opinions that go beyond the usual scope of a

23  treating doctor's testimony, the proponent of the testimony must comply with Rule 26(a)(2)."  *Id.*

24  at 819-20.

25          Here, plaintiffs argue the court should ignore declarations from physicians

26  Dr. Hundal and Dr. Krawiec.  ECF No. 31 at 12.  Plaintiffs claim that defendants failed to

1   designate the doctors as experts under Rule 26(a)(2) and as required by the court's scheduling

2   order.  ECF No. 31-4 at 2.  Plaintiffs argue that defendants' expert opinions are inadmissible at

3   trial and should not be considered on summary judgment.  ECF No. 31-4 at 2.  Plaintiffs cite no

4   persuasive authority to support this position.

5           Dr. Hundal testified about his examination of Shirley Gregory in her office visit.

6   Dr. Krawiec testified about his examination of Shirley Gregory, the results of laboratory testing

7   performed on two samples of Shirley Gregory's hair and skin, and the treatment plan he

8   developed in collaboration with other medical professionals.  Both doctors were treating

9   physicians and  percipient witness not hired to render expert opinions.  *See Goodman*, 644 F.3d

10  at 819.  Dr. Hundal and Dr. Krawiec were exempt from Rule 26(a)(2) requirements.  *See*

11  FED. R. EVID. 701, Notes of Advisory Comm. on 2000 amendments.  This court may consider

12  the doctors' testimony in ruling on the motion.

13          Plaintiffs also urge the court to ignore the declarations of  Debbie Lemenager, a

14  Medical Entomologist with Sutter-Yuba Mosquito Vector Control District, and Nicolas Oliver,

15  Supervising Agricultural & Standards Biologist at the Sutter County Department of Agriculture.

16  ECF No. 31 at 12.  Had defendants designated Lemenager and Oliver as experts, and complied

17  with procedural requirements, there would be no prohibition against Lemenager and Oliver

18  giving both lay and expert testimony.  *See United States v. Freeman*, 498 F.3d 893, 904 (9th Cir.

19  2007).  Here, lay testimony from Lemenager and Oliver is admissible.  *See Beyene*, 854 F.2d at

20  1181.  Expert testimony from Lemenager and Oliver is inadmissible because of defendants'

21  failure to comply with Rule 26(a)(2) requirements.  *See id.*

22          To clarify, Oliver's statement that he tested an air purifier filter provided by

23  Shirley Gregory and found no evidence of mite infestation is lay testimony.  *See* FED. R. EVID.

24  701, Notes of Advisory Comm. on 2000 amendments.  But Oliver's professional opinion, "If the

25  Gregorys were dealing with a mite infestation, in my experience such an infestation would

26  present visible evidence," is inadmissible expert testimony.  *See id.*; ECF No. 21 at 2.

1   Lemenager's testimony is admissible in that Lemenager states she visited the Gregory home,

2   collected and tested samples, and found no mites.  *See id.*; ECF No. 20 at 2.

3   III.  Facts[2]

4          Plaintiffs own farmland that includes a 3,000 square-foot home, a mobile home, a

5   storage building, and a number of sheds.  ECF No. 31-3 at 1.  Allied Property & Casualty

6   Insurance Company sold plaintiffs a farm owner's insurance policy on September 20, 2007

7   under Policy No. FPK FMP 78 0 2930091.  *Id*. at 2.  On October 27, 2008, Shirley Gregory

8   contacted defendants to make a claim for a mite infestation in the Gregory home.  *Id*.  Muriel

9   Hinsdale, a claims representative, interviewed plaintiffs by telephone.  *Id*.  Plaintiffs told

10  Hinsdale a mite infestation began June 20, 2008.  *Id*.  Plaintiffs believed the infestation

11  originated with birds on their own or a neighboring property.  *Id*. at 4.  Plaintiffs said they

12  burned furnishings, carpet, and clothing in a futile attempt to combat the infestation.  *Id*. at 3.

13  Plaintiffs hired two pest control companies, Zap and Clark's Pest Control, but neither company

14  found mites.[3]  *Id*.  Plaintiffs contacted Dave Glassel, the owner of a pest control company in

15  Texas.  *Id*. at 4.  Glassel, without visiting plaintiffs' property, sold plaintiffs $3500 in products to

16  fight the infestation.  *Id*.

17         Shirley Gregory took her home air purifier filter to the University of California,

18  Davis Entomology Laboratory to test for mites.  *Id.*  The filter tested negative.[4]  *Id*.  Debbie

19

20         [2] Plaintiffs dispute many facts based on defendants' failure to comply with expert
21  disclosure and discovery rules.  Many of the facts plaintiffs dispute are supported by the record.
    In light of the court's ultimate resolution of the case, the court does not reach the balance of
22  plaintiffs' attempts at disputing facts that are not material.

23         [3] Plaintiffs argue the court should discount evidence from the pest control companies.
    Plaintiffs argue the pest control companies conceded not knowing how to combat the infestation.
24  ECF No. 31-3 at 3; ECF. No. 19-6 at 3.  Even if the pest control companies did not know how to
    combat mites, there was no evidence either company found mites.

25         [4] Plaintiffs dispute the relevance of this fact because there is no evidence about what tests
26  were performed.  Plaintiffs do not explain how a lack of detail about the testing process puts the
    test results in dispute.

Lemenager, a Medical Entomologist with the Sutter-Yuba Mosquito Vector Control District, visited the Gregory home and collected samples. *Id*. at 5-6. Lemenager did not find mites. *Id*. at 6. Shirley Gregory took the home air purifier filter for testing to Nick Oliver, Supervising Agricultural & Standards Biologist at the Sutter County Department of Agriculture. *Id*. at 8. Oliver found no evidence of mite infestation. *Id*.

Shirley Gregory saw general practitioner Dr. Sant Singh Hundal for a rash on her abdomen. Dep. of Dr. Hundal (Hundal Dep.) at 10. Dr. Hundal found no evidence of mites. *Id*. Shirley Gregory visited with Dr. Mark Krawiec, and his examination found no evidence of mites. Dep. of Krawiec (Krawiec Dep.) at 13. Shirley Gregory gave Dr. Krawiec a bag with hair and "exfoliated body cells." *Id*. A laboratory tested the items and found no evidence of mites. *Id*. Shirley Gregory brought a second hair and cell specimen to Dr. Krawiec, and the lab test for this second sample was also negative. *Id*. at 15. Shirley Gregory sent samples for testing to State Veterinarian Dr. Miner. ECF No. 31-3 at 11. His testing did not find mites. *Id*. Shirley Gregory continued to complain of rashes and was referred to a dermatology/medicine clinic where she visited Dr. Krawiec, as well as Dr. Pettey, a dermatologist, and Gary Nelson, a dermatology physician assistant. Krawiec Dep. at 17-18. Nelson performed a skin biopsy on Shirley Gregory. *Id*. at 24. The biopsy was negative for mites. *Id*. at 25-26. Physicians diagnosed Shirley Gregory with "Non specific dermatitis/delusions of parasitosis." *Id*. at 26. According to Dr. Krawiec, delusions of parasitosis is a syndrome where a patient believes she has parasites on her body, yet there is no clinical evidence. *Id*. at 26-27.

Hinsdale, the claims representative, sent plaintiffs a letter denying the claim based on coverage exclusion for loss from vermin infestation. ECF No. 31-3 at 7. Plaintiffs then sued in Sutter County Superior Court, and as noted, defendants removed to this court.

/////

/////

/////

IV.  Analysis

Plaintiffs allege breach of contract and breach of the covenant of good faith and fair dealing.

A.  Interpreting the Insurance Policy

Insurance policy interpretation is a question of law.  *Powerline Oil Co., Inc. v. Super. Ct.*, 37 Cal. 4th 377, 390 (2005).  Insurance policies are contracts governed by ordinary rules of contract interpretation.  *Pa. Gen. Ins. Co. v. Am. Safety Indem. Co.*, 185 Cal.  App. 4th 1515, 1524 (2010); *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998).  The goal of contract interpretation is to give effect to the intent of the parties based on the writing.  *Id.*  The writing governs if it is clear and explicit.  *Id.*

A policy provision is ambiguous when it is capable of more than one interpretation.  *Waller v. Truck Ins. Exch., Inc.,* 11 Cal. 4th 1, 18 (1995).  The court evaluates an ambiguity in the context of the policy and case at issue.  *Clarendon Am. Ins., Co. v. N. Am. Capacity Ins. Co.*, 186 Cal. App. 4th 556, 567 (2010).  A policy provision must be construed in the context of the entire contract.  *Foster-Gardner,* 18 Cal. 4th at 868 (quoting *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1265 (1992)).  If the policy language and its context do not resolve an ambiguity, then the ambiguity may be construed against the party who wrote the contract for the benefit of the insured.  *Id.* (quoting *La Jolla Beach and Tennis Club, Inc., v. Indus. Indem. Co.*, 9 Cal. 4th 27, 37 (1994)).

Courts generally protect "the objectively reasonable expectations of the insured." *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (1990).  But the insured's subjective beliefs are not necessarily protected.  *Clarendon Am. Ins. Co.*, 186 Cal. App. 4th at 567.  "Any ambiguous terms are resolved in the insured's favor, consistent with the insured's reasonable expectations." *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 471 (2004) (quoting *Safeco Ins. Co., v. Robert S.*, 26 Cal. 4th 758, 763 (2001)).

/////

B.  <u>The Contested Term – Are Mites "Vermin"?</u>

The policy provision at issue is a coverage exclusion for vermin.  The provision excludes coverage for loss from "[n]esting or infestation, or discharge or release of waste products or secretions by birds, vermin, rodents, insects or domestic animals."  ECF No. 19-1 at 43.  The policy does not define these terms.  Neither party argues mites are birds, rodents or domestic animals.  Although defendants do not argue mites are insects, plaintiffs note that mites are arachnids,[5] not insects.  ECF No. 31 at 15.  The narrow question here is whether mites are "vermin."

Defendants point to Webster's Dictionary in arguing that mites are vermin.  ECF No. 18 at 13.  Webster's Dictionary defines vermin as "any of a number of small animals with filthy, destructive, troublesome habits as flies, lice, bedbugs, mice, rats and weasels."  *Id.* Defendants argue plaintiffs agree mites are vermin.  *Id.* at 13-14.

In a deposition, Shirley Gregory said that mites are a type of "filthy, destructive, troublesome" thing.  *Id.* at 14.  Defendants argue that Shirley Gregory conceded in her deposition that mites were within the policy's definition of vermin.  ECF No. 18 at 10.  Defendants seem to argue that if plaintiffs believed mites were vermin, then the policy unambiguously excluded coverage.  ECF No. 18 at 13.  But Shirley Gregory's deposition testimony is not as clear as defendants contend.  In response to a question from defense counsel about whether mites were included in the dictionary definition of vermin, Shirley Gregory answered, ". . . my understanding is that what [sic] it was saying mites it did not seem to fit into that category."  Dep. of Shirley Gregory (S. Gregory Dep.) at 30.

Nevertheless, plaintiffs do not show that the term vermin, in the context of this insurance policy, is ambiguous.  In *Pieper v. Commercial Underwriters Ins. Co.*, 59 Cal. App. 4th 1008, 1016-17 (1997), the parties disputed the definition of "brush fire" in an insurance

---

[5] Arachnid is defined as "an invertebrate animal of a class including spiders, scorpions, mites, and ticks."  Compact Oxford English Dictionary at 42 (3d ed. 2005).

1    policy.  In interpreting the insurance policy, the *Pieper* court looked to the insured's objectively

2    reasonable understanding of the term.  *See id*.  Here, plaintiffs do not make an objectively

3    reasonable showing that mites are not vermin within the context of the entire contract.  *See*

4    *Foster-Gardner,* 18 Cal. 4th at 868.  Instead, plaintiffs argue, "Nationwide is more than aware

5    that the term 'vermin' does not form a proper basis for a policy exclusion."  ECF No. 31 at 15.

6    They point to out of state cases in concluding vermin has no established definition in insurance

7    policies.  *Id*. at 15-16.  Plaintiffs argue "vermin" is legally ambiguous and does not form a proper

8    basis for a policy exclusion.  *Id at 15*.  Plaintiffs rely on *Umanoff v. Nationwide Mut. Fire Ins.*,

9    442 N.Y.S. 2d 892 (1981), *Sincoff v. Liberty Mut. Fire Ins. Co.*, 11 N.Y.2d 386 (1962), and

10    *Jones v. Am. Econ. Ins. Co.*, 672 S.W. 2d 879 (1984) for support.  These cases involve disputes

11    about the scope of the term vermin in insurance policy exclusions.  Plaintiffs present only a

12    limited analysis and do not explain why these cases should control or how these cases guide this

13    court's interpretation of vermin within the context of this insurance policy.

14          Here, applying the *Pieper* court's approach, and the requirement that language be

15    read in the context of the entire contract, loss from mites was not covered.  The insurance policy

16    included pages of exclusions ranging from rain to thawing to artificially generated electric

17    current to vermin.  ECF No. 19-1 at 40-44.  Many other potential sources of loss, unlikely to be

18    covered, were not listed.  Creatures potentially described as vermin, including skunks, snakes,

19    and spiders, were not named in the exclusions.  Yet an objectively reasonable insured would

20    understand the policy to exclude coverage for loss caused by these creatures because of the

21    broad definition of vermin.  *See AIU Ins. Co.,* 51 Cal. 3d at 822; *Pieper*, 59 Cal. App. 4th at

22    1016-17.  Mites may be less notorious as a source of discomfort and property destruction, but in

23    an objectively reasonable reading of the policy, mites are no more covered than other

24    troublesome creatures.

25          Plaintiffs knew the insurance policy contained exclusions.  Shirley Gregory

26    testified in her August 15, 2011 deposition, "Then we had purchased that umbrella insurance,

1  which we felt like was going to cover anything that we needed it to." (S. Gregory Dep. at 22).

2  She added, ". . . we took out the extra umbrella insurance just to cover anything that might

3  happen." *Id.* Defense counsel went on to ask if Shirley Gregory understood that there were

4  coverage exclusions. *Id.* at 22-23. Shirley Gregory acknowledged that not every source of loss

5  was covered. *Id.* at 23. Shirley Gregory's view that even an umbrella policy did not cover every

6  conceivable source of loss was objectively reasonable. *See Pieper*, 59 Cal. App. 4th at 1016-17.

7         The policy did not define vermin. In construing the definition within the context

8  of the entire contract and its many exclusions, and in making an objectively reasonable

9  interpretation, vermin included mites.

10         C. <u>Plaintiffs Presented No Evidence to Defeat Summary Judgment</u>

11         Moreover, plaintiffs have raised no genuine issue of material fact.

12         Even assuming that this court ignores evidence from medical doctors and other

13  witnesses in its ruling on this motion, plaintiffs have not met their burden to defeat summary

14  judgment. Defendants met their initial burden of showing there is an absence of evidence to

15  support plaintiffs' case. *See Celotex*, 477 U.S. at 325. The burden thus shifted to plaintiffs to

16  establish that there is a genuine issue of material fact. *See Matsushita*, 475 U.S. at 585. If there

17  is a genuine issue, a plaintiff bears the burden of establishing the genuine issue both in the record

18  before the court and in its briefing on summary judgment. *Carmen v. San Francisco Unified*

19  *School Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001).

20         Self-serving declarations and affidavits, without more, cannot create a disputed

21  material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[The

22  Ninth Circuit] has refused to find a 'genuine issue' where the only evidence presented is

23  'uncorroborated and self-serving' testimony"); *Carmen,* 237 F.3d at 1028.

24         Here, the record contains only an unsubstantiated allegation of a mite infestation.

25  Even if mites are covered, plaintiffs presented no evidence of a mite infestation or other

26  explanation for the loss. Two pest control companies found no evidence of mites. ECF No. 31-3

at 3.  Laboratory testing at UC Davis, Sutter County, and a hospital did not find mites.  ECF No. 31-3 at 4, 8; Krawiec Dep. at 15.  Testing by a state veterinarian did not find mites.  ECF No. 31-3 at 11.  An entomologist inspected the Gregory home and did not find mites.  ECF No. 31-3 at 6.  Two general practitioners, a dermatologist, and a dermatology physician's assistant found no evidence of mites in examinations of Shirley Gregory.  Hundal Dep. at 10; Krawiec Dep. at 17-18.

Plaintiffs provide evidence undercutting the declarations of Lemenager and Oliver.  ECF No. 31-2 at 2-3.  In her November 30, 2011 declaration, Shirley Gregory disputes the testing procedures used by the state and county officials.  *Id.*  But her conclusory statements, provided without any indication of expertise to critique testing procedures, do not establish a genuine issue of material fact.  *See Villiarimo,* 281 F.3d at 1061; *Carmen,* 237 F.3d at 1028.

The record contains very little information about why mites were suspected.  In a transcribed October 27, 2008 telephone conversation between claims representative Muriel Hinsdale and Daryl and Shirley Gregory, the Gregorys said the infestation likely originated from wild birds or chickens.  ECF No. 19-6 at 2.  The Gregorys said neighboring orchards were sprayed for mites and that there were many birds in the area that could be a source of mites.  *Id.* at 5-6.  Plaintiffs presented no other evidence about the source.

An internet search led plaintiffs to Dave Glassel.  S. Gregory Dep. at 58.  Without visiting the house or conducting tests, Glassel told Shirley Gregory that the house was likely infested with a Collembola mite.  *Id.* at 59.  Over a two year period, Glassel sold plaintiffs approximately $3500 in chemicals and a fog machine to combat mites.  *Id.* at 59-60.

Glassel's opinion alone is not evidence of an infestation.  His opinion in support of plaintiffs' claim is uncorroborated and self-serving.  *See Villiarimo,* 281 F.3d at 1061; *Carmen*, 237 F.3d at 1028.  It also is expert testimony that would be inadmissible at trial because plaintiffs did not designate Glassel as an expert per Rule 26 and the scheduling order.  Glassel's opinion does not create a genuine issue of material fact.  *See Walton v. U.S. Marshals Serv.*, 493

F.3d 998, 1008 (2007) (finding conclusory expert opinion did not create a genuine issue of material fact).

Plaintiffs present no evidence to defeat summary judgment.

D. <u>Fungus Damage Claim</u>

Plaintiffs argue defendants erroneously denied coverage based on the fungus and decay exclusion despite a policy provision insuring against fungus and decay.  ECF No. 31 at 8. Plaintiffs point to a letter mailed to the Gregorys in which Hinsdale quoted section 3(a)(22)(b) from the policy, "Rust, corrosion, fungus, decay. . . ," and section 3(a)(22)(e) ". . . products or secretions by birds, vermin, rodents, insects or domestic animals."  ECF No. 19-1 at 43.

Plaintiffs' argument here is without merit.  The "Limited Fungi or Bacteria Coverage Endorsement" plaintiffs purchased only covers loss from fungi or bacteria when the fungi or bacteria occur because of a "Covered Cause of Loss."  ECF No. 19-1 at 114, Section A(1)(a) and A(2).  A "Covered Cause of Loss" includes fire, wind, hail, freezing, and other hazards.  *Id*. at 36-37.  Plaintiffs present no evidence that loss from fungus or decay resulted because of a "Covered Cause of Loss."

Plaintiffs' fungus damage argument is without merit.

E. <u>No Tort Liability Where There Is No Coverage</u>

There can be no liability, even if defendants were negligent in investigating the claim, because the loss was not covered.

The law implies a covenant of good faith and fair dealing in every contract, including insurance policies.  *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007).  This implied covenant requires a party to refrain from doing anything to injure the rights of the other party under the contract.  *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal. 3d 208, 214 (1986).  If an insurer unreasonably and in bad faith withholds a claim payment, then the insurer is subject to tort liability.  *Id*. at 214-15.  To reasonably and in good faith deny a claim, an insurer must fully investigate the grounds for the denial.  *Bosetti v. U.S. Life Ins. Co. in City of N.Y.*, 175 Cal. App.

4th 1208, 1235-36 (2009).  But if an insurance payment is denied with proper cause, there is no breach of the implied covenant of good faith and fair dealing.  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990) (citing *Cal. Shoppers Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54-55 (1985)).  A valid claim for tortious breach of the implied covenant must show that payment was due under the policy and that the payment was withheld without proper cause. *Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1250 (2006).  Whether after an adequate or inadequate investigation, the insurer properly denies coverage, there can be no liability for breach of the implied covenant.  *Id.*

Where there was no coverage for mold damage under an insurance policy, the *Benavides* court reversed an award compensating plaintiffs for the insurer's negligent investigation.  *Id.* at 1245.  Here, plaintiffs present no evidence of mites and make no showing that mite damage was covered.  Plaintiffs argue that where coverage turns on a factual question, an insurance company has a duty to investigate.  ECF No. 58-1 at 9-10.  Plaintiffs allege that defendants' breach of an independent duty to investigate was egregious because an investigation could require scientific examination not easily available to plaintiffs.  *Id.* at 10-11.  But mite damage is not covered under an objectively reasonable reading of the policy, no matter the complexity of an investigation.

Even assuming defendants' investigation was inadequate, there can be no tort liability for breach of the implied covenant of good faith and fair dealing when the source of loss was neither shown nor covered.

F.  No Specific Facts To Reopen Discovery

Plaintiffs argue summary judgment also should be denied or continued because defendants failed to comply with discovery.

A district court should not grant summary judgment if the nonmovant makes a good faith showing that a continuance is needed to obtain essential facts to preclude summary judgment.  *State of Cal., on the Behalf of the Cal. Dep't of Toxic Substances Control v. Albert*

1   *Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).  The party requesting a continuance to reopen

2   discovery must identify by affidavit the specific facts that further discovery would reveal and

3   explain why those facts would preclude summary judgment.  *Tatum v. City and Cnty. of S.F.*,

4   441 F.3d 1090, 1100 (9th Cir. 2006) (finding where party did not satisfy Rule 56 requirements,

5   the district court did not abuse its discretion in denying a continuance).[6]  The nonmovant must

6   show: (1) the specific facts they hope to elicit from additional discovery; (2) the facts exist; and

7   (3) the facts are essential to counter the summary judgment motion.  *State of Cal.*, 138 F.3d at

8   779.  Mere declarations to a need for additional discovery do not satisfy these requirements.

9   *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986).

10          A district court does not abuse its discretion by denying a request for additional

11   discovery if the movant did not pursue discovery diligently.  *Conkle v. Jeong*, 73 F.3d 909, 914

12   (9th Cir. 1995) (quoting *Cal. Union Ins. Co. v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278

13   (9th Cir.1990)).  A movant cannot complain if it fails to diligently pursue discovery before

14   summary judgment.  *Brae Transp., Inc.*, 790 F.2d at 1444.

15          Plaintiffs' opposition to summary judgment refers the court to an earlier motion to

16   compel discovery and to a declaration.  ECF No. 31 at 11-12.  Plaintiffs claim these documents

17   describe "the additional information that the Defendants have refused to provide which is

18   necessary to a complete opposition to the Defendants' motion for summary judgment."  *Id*. at 12.

19   The motion to compel discovery and declaration plaintiffs reference describe materials plaintiffs

20   want discovered.  ECF No. 33-1 at 5 and ECF No. 32 at 3-4.  But plaintiffs do not describe what

21   facts plaintiffs hope to elicit, say the facts exist, and that the facts are essential to defeat

22   summary judgment.  *See State of Cal.*, 138 F.3d at 779.

23   /////

24   _____

25          [6] *Tatum* references Rule 56(f) in describing the requirement to identify specific facts.
     The 2010 Amendments to Rule 56 moved the language from subsection (f) to subsection (d)
26   without substantial change.  FED. R. CIV P. 56, Notes of Advisory Comm. on  2010 amendments.

1         The parties had ample time to conduct discovery.  Plaintiffs filed this action on

2    September 25, 2009.  ECF No. 7 at 2.  In a September 16, 2010 scheduling order, the previous

3    district judge set June 17, 2011 as the discovery cutoff.  The parties agreed to modify the order,

4    and on June 22, 2011, this court extended discovery to August 19, 2011.  Over the twenty

5    months between the start of litigation and the initial June 17, 2011 discovery cutoff, plaintiffs

6    never served written discovery on defendants.  ECF No. 40 at 7.  Plaintiffs did not diligently

7    pursue discovery before summary judgment.  *See Brae Transp. Inc.*, 790 F.2d at 1444.  Plaintiffs

8    do not make the showing necessary to reopen discovery.  *See State of Cal.*, 138 F.3d at 779.

9         IT IS THEREFORE ORDERED that defendants' motion for summary judgment

10   (ECF No. 17) is GRANTED.

11   DATED:  December 18, 2012.

13   _____
     UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26